## Case No. 5,700.

### GRANT et al. v. POILLION.

[35 Hunt, Mer. Mag. 586.]

Circuit Court, S. D. New York. Sept. 15, 1856.[1]

ADMIRALTY JURISDICTION—ACCOUNTING—JOINDER IN LIBEL—EFFECT OF.

[1. The master and part owner of a vessel entered into a joint-stock association which shipped by the vessel a cargo to be sold at the port of destination by the master for the joint benefit, he to receive a commission on the sales, but the cargo failed to realize sufficient to pay the agreed freight. *Held*, that admiralty had no jurisdiction of a libel by the master and other owners against the other members of the association for the deficiency in freight, as such a suit necessitated an accounting between the master and such other members.]

[2. The joinder of the owners, other than the master, in the libel was not an adoption of the master's contract of association so as to make them members thereof, but was merely an affirmance of the contract in the bill of lading.]

[Appeal from the district court of the United States for the Southern district of New York.]

[This was a libel by William B. Grant, William L. Flitner, and others, owners of the ship Constellation, against Cornelius Poillion, to recover freight. The decree was dismissed in the district court (case unreported), and libelants appeal.]

NELSON, Circuit Justice. The libelants were owners of the ship Constellation, of which Wm. L. Flitner was master and part owner, and carried from this port to the port of San Francisco, in the years 1849-50, 250,-000 feet of lumber and 29,700 cypress shingles, freight to be paid at the rate of $55 per thousand feet for the lumber, and $20 per thousand for the shingles, amounting in the whole to the sum of $13,944.02. The net proceeds of the sale at San Francisco amounted only to the sum of $11,494.93, which was received by the master, leaving a balance of $2,449.09 due, to recover which amount the present suit is brought. The defense set up is as follows: Wm. L. Flitner, the master and part owner of the Constellation, which was lying at the port of New York in September, 1849,—the other owners residing in the states of Maine and Massachusetts,—entered into a joint-stock association with the respondents, and several other persons not made parties to the suit, called the Constellation Lumber Company, for the purpose of purchasing and furnishing cargo for the vessel, the cargo to be composed of lumber and such articles as the company might deem proper; and after the departure of the vessel from New York the cargo was taken under the control and disposition of the master, who was to act under instructions from the company, and to be considered its agent. The cargo was also consigned to him, and a commission of five per cent. to be allowed him for making the sales at the port of destination. The price of the freight was agreed on, as already stated. The stock of the company consisted of twelve shares, Flitner, the master, having subscribed two of them, and thus being the owner of one-sixth of the cargo, besides his interest to the amount of five per cent. of the sales. The usual bill of lading was entered into by the master, in which he was made the assignee. The cargo was under the directions of Flitner, and amounted to the net sum stated. It is insisted, on the part of the respondents, that the libelants were jointly concerned in the adventure, and bound to contribute their proportionate share of the loss, and hence that the purchase and shipment of the cargo

---

[1] [Affirmed in 20 How. (61 U. S.) 162.]

were a partnership transaction, requiring an account to be taken, and the partnership affairs adjusted, in order to ascertain the balance, if any, due them, and that, as a court of admiralty is incompetent to adjust the open accounts of a partnership transaction, the court has no jurisdiction in the case. The position assumes that Flitner, the master, acted on behalf of the owners in entering into the joint-stock association for the purchase of the cargo, with a view to freight the ship; for otherwise there is no pretext for this ground of defense. But it is not pretended that the owners participated in getting up the adventure, or had any knowledge of it, except the master; and it is quite clear that he had no authority to bind them in a transaction of this nature, either as master or part owner. It was said of the argument, the bringing of this suit confirmed the acts of the master. It may be said the bringing of the suit affirms the contract in the bill of lading, but no part of the joint association contract appears in that instrument. It is in the usual form, the Constellation Lumber Company appearing as the shippers of the cargo. The confirmation of the joint-stock company is not at all involved in the suit, so far as the absent owners are concerned. It is further urged that conceding that the absent owners were in no wise connected with the purchase and shipping of the cargo, and hence no partnership transaction involved as to them, still a recovery of the balance of the freight cannot be justly admitted until the settlement of the joint concern between Flitner, one of the libelants, and the other members of the company, and that this ground is equally fatal to the jurisdiction. I am inclined to concur in this view. Flitner is one of the part owners of the vessel, and as such is entitled to a portion of the freight. For this reason he is made one of the libelants. Being also jointly interested in the cargo, and one of the shippers, he is bound to contribute his share of the balance of freight claimed. And whatever may be that contributive share, the respondents are entitled to have it deducted from his portion of the freight, or, if the contributive share exceeds this, the balance should be paid to his co-owners, or accounted to them as his portion of the freight to be paid. I do not see, therefore, that justice can be administered in the case without an account taken between one of the libelants and the respondents, involving the whole of the joint-stock operations in the purchase of the cargo, and which this court is incompetent to take. It would be manifest injustice to allow him to recover in the case his share of the freight, leaving the respondents to bring a cross suit for contribution; and I do not see how this can be avoided short of an adjustment of the partnership concern in the cargo. A court of equity can adjust the interests of all parties concerned in one suit, and we think the libelants should have resorted to that tribunal. I concur, therefore, with the disposition of the case below, and confirm the decree dismissing the libel, with costs.

[NOTE. Upon an appeal to the supreme court, the decree of the circuit court was affirmed in an opinion by McLean, Justice. 20 How. (61 U. S.) 162. It was held that the case would clearly not be within the admiralty jurisdiction in England, and in the United States "the jurisdiction of courts of admiralty is limited, in matters of contract, to those, and to those only, which are maritime." The account to be adjusted in this case is said to be complicated; the losses were to be apportioned, and an inquiry instituted into the conduct of the master. The exercise of such powers was held to be appropriate only to a court of chancery.]